## SUPREME COURT.

JOHN H. BRADY agt. THE MAYOR OF THE CITY OF NEW YORK, JOHN L. BROWN, and others.

Where a *tax levy law* passed by the legislature, for the city of New York, directly appropriates a specified sum for a particular object—repaving and repairing streets, and in pursuance of such law, the common council of the city pass an ordinance formally appropriating the money to such object; a *contract* for the work and expenditure of the money made by the act under the directions of the street department, must be regarded as made directly by the authority of the legislature, not by the authority of the common council.

Therefore a city *tax payer* and *cestui que trust* of the city property under the 3d section of the act of 1864 cannot maintain an action, under that act, against the common council and the contractor, to restrain them by injunction from making payments under a contract to do the work and to declare the contract void, on the ground that it was not made as provided by law—made without public notice for sealed proposals or bids as required. by law, even though the *attorney general* or the *city corporation* could maintain such action.

The fund appropriated by the legislature, and which was to be expended under the contract, is not at all, to any extent or in any respect committed to the management of the common council or supervisors of the county, as *trustees* within the meaning of the act of 1864.

MOTION by defendants to dissolve injunction prohibiting the making of payments on contract for repairing the streets of the city of New York for the year 1867.

The contract was made without advertising for proposals.

The grounds upon which the preliminary injunction was asked for and sought to be continued, sufficiently appear from the statements in the opinion.

JAMES EMOTT, *for plaintiff.*
AARON J. VANDERPOEL, *for defendant.*

SUTHERLAND, J.   The counsel for the plaintiff argues, and appears to think, if it should be conceded that the contract made with the defendant, Brown, for repairing and keeping in repair the streets, &c., of the city, could and ought to be declared void in an action by the *attorney general* or the *city corporation,* on the ground that it was not made as provided by law; that is, upon the ground that it was made without public notice for sealed proposals or bids as required by law, that it would follow that this action can be maintained by the plaintiff as a city tax payer and a *cestui que trust* of the city property, under and by virtue of the 3d section of the act of April, 25th, 1864 (*ch.* 404, *p.* 945 *Laws of* 1864) and that it would also follow that the motion to continue the injunction ought to be granted, irrespective of the questions whether the amount by the contract to be paid for the work was too much, and whether the work had been and was being faithfully and properly performed by Brown.

This, I think, is a mistake; and it is the great defect of the counsel's argument.

It is settled that the plaintiff, as a tax payer, cannot maintain this action without the aid or authority of the 3d section of the act of 1864.   (*Doolittle* agt. *The Supervisors of Broome Co.* 18 *N. Y. R.* 155; *Roosevelt* agt. *Draper,* 33 *N. Y. R.* 318.)

Is the plaintiff's case within that section?

The question is important and I have given it a careful consideration, and I must say that, in my opinion, the plaintiff cannot maintain this action under that section, though it should be conceded that the contract with Brown might

be declared void at the instance of the attorney general or of the city corporation in a proper action, on the ground that it was made without the observance of the formalities required by law, before referred to.

What is the law? and what are the facts?

The 3d section of the act of 1864 declares the common council of the city of New York, and also the supervisors of the county of New York, trustees of the property, funds and effects of said city and county, "so far as such property or effects are or may be committed to their management or control, and every person residing in said city and assessed to pay taxes therein, who shall pay taxes therein, is thereby declared to be a *cestui que trust* in respect to the said property, funds and effects; and the section further declares that "any co-trustee or any such *cestui qui trust* shall be entitled, as against such trustees and in regard to such property, funds and effects, to all the rights and remedies provided by law of any co-trustee or *cestui que trust* to prosecute and maintain any action to prevent *waste* and *injury* to any property, funds and estate held in trust," and the section further declares that "such trustees are hereby made subject to all the duties and responsibilities imposed by law on trustees," and that "such duties and responsibilities may be enforced by any co-trustee or *cestui que trust* aforesaid."

By the first section of the act of April 23d, 1867, commonly called the city "tax levy" for that year, the board of supervisors of the county of New York, among other sums of money, were authorized and *directed* to levy and raise by tax $130,000 for repaving and repairing streets for the current year, the act expressly providing that the work was "to be done by contract or agreement, *as provided by law*, under the direction of the street department, and no contract to be made in excess of the sum authorized. (*Laws of* 1867, *p.* 1602.)

The 3d section of the act declares that, "should the common council neglect or refuse to make the appropriation for

the several amounts herein authorized by law, &c., then and in that case, the mayor and comptroller are hereby author-ized and *directed* to make said appropriations; and the ap-priations thus made by the mayor and comptroller *shall be in effect the same as if made by the common council.*"

The 2d and 4th sections of the act declare, that the said several sums hereby appropriated shall be applied *only* to the objects and purposes for which the same are *hereby appro-priated, &c.*

By the 5th section, it is declared that "the mayor, alder-men and commonalty of the city of New York shall not be liable upon any contract made, or expenditure authorized, or liability incurred, by any board, department, or officer of said corporation, for any object or purpose which is not ex-pressly authorized by this act, nor for any contract made, or expenditure authorized, or liability incurred by any board, department, or officer of said corporation, for any object or purpose named in the act, beyond the amount appropriated to such specific object or purpose," &c.

Now, in view of these directions and provisions of the act of 1867, how can it be said that the $130,000 raised and in the hands of the chamberlain or comptroller, and $125,000 of which was, by the contract made with the defendant Brown, to be paid to him for the work to be done under the contract, and the remaining $5,000 of which was to be expended in the discretion of the street commissioner, for the expense of the inspection and superintendence of the work to be done under the contract, were at all, or to any extent, or in any respect *committed to the management* or con-*trol of the common.council of the city of New York,* or to the *supervisors* of the *county of New York,* within the meaning or purpose of the 3d section of the act of 1864 ?

In view of the directions and provisions in the act of 1867 referred to, how can it be said that the $130,000 were intrusted to the common council or the supervisors, or that the common council or supervisors had any management or

control thereof after the money was raised and in the hands of the comptroller or chamberlain ? or even that the contract made by the street commissioner with Brown was made by the authority of the common council or supervisors ?

True, the 3d section of the act of 1867 probably shows that the legislature contemplated that the common council would *formally* pass an ordinance appropriating the $130,000 to the purpose for which it was *directed* to be raised by the act; and true the common council did, on the 17th of May, 1867, pass an ordinance so formally appropriating the money, but the same section shows that this proceeding of the common council was a mere formal proceeding, as to which or the subject or object of which the common council had no discretion or control; in fact, that though in theory and form it was a city corporation legislative proceeding, yet in fact and substance that it was a mere ministerial proceeding; for by the same section, if the common council neglected to make the appropriation for thirty days after the passage of the act, the mayor and comptroller were not only authorized, but *directed* to make it with the *same effect as if made by the common council.*

A careful consideration of the directions and provisions of the act of 1867, which have been referred to, forces the conclusion that the $130,000 should be regarded as in substance and effect directly appropriated by the legislature to the purpose for which it was raised, without, or free from any inter-vening discretionary power or control, either of the common council, supervisors, mayor or comptroller, and that the contract for the work and expenditure of the money to be made by the act, under the direction of the street department, should be regarded as to be made directly by the authority of the legislature, not by the authority of the common council.

If, then, we give to these directions and provisions of the act of 1867 the force and effect they were intended to have (and the constitutionality of them has not been questioned by

the counsel), how can the plaintiff maintain this action as a city tax payer and *cestui que trust* of the city property, under the 3d section of the act of 1864; that section expressly declaring the common council and supervisors to be trustees of the city property, funds and effects, " so far as such property, funds and effects are or may be committed to *their management or control.* And if what has been said as to the act of 1867 is correct, the $130,000 was not at all, to any extent, or in any respect, committed to *their management or control.*

Again, the 3d section of the act of 1864 gives the *cestui que trust* the right to prosecute and maintain an action " to prevent *waste and injury*" to the trust property.

Now, after a careful reading and consideration of all the affidavits submitted in this case, giving to the affidavit of chief engineer Craven the weight which it probably ought to have from his profession, official position, general knowledge of the subject matter and apparent disinterestedness, I am inclined to think that the weight of the evidence is that the sum of $125,000 was a fair and reasonable sum for what was to be done and furnished by Brown under the contract, and that he had faithfully and properly performed, up to the time of the granting the injunction, his part of the contract; and if so, how could the payment to Brown of the contract price be *a waste* of the money, even if it should be deemed trust fund or trust property, within said 3d section.

Moreover, even assuming that the plaintiff can maintain this action as a tax payer and *cestui que trust,* under the act of 1867, for the purpose of having the contract declared illegal and void, for want of the observance of formalities required by law, yet, if in fact the sum to be paid under the contract was not too much, and Brown had properly done the work and furnished the materials to be done and furnished under the contract, up to the time of granting the injunction, it appears to me quite clear that the injunction restraining the further prosecution of the work and the pay-

ment of the money, ought not to have been granted, especially considering the inconvenience to the public likely to arise from an interruption of the work.

The injunction must be vacated, and the motion to continue it denied with $10 costs.